# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GNC FRANCHISING LLC, formerly            )
known as GNC FRANCHISING INC., and       )
GENERAL NUTRITION CORP.,                 )
    Plaintiffs,       )
                       )
vs.                                      )   Civil Action No. 05-1341
                       )   Judge Nora Barry Fischer
SOHAIL KHAN, SALEEM KHAN, and            )
CHAUDHRY BROTHERS CORP.,                  )
    Defendants,        )
                       )
    and                )
                       )
SOHAIL KHAN and SALEEM KHAN,             )
                       )
vs.                                      )   Civil Action No. 06-00283
                       )
GNC FRANCHISING LLC, formerly            )
known as GNC FRANCHISING INC.            )

## OPINION

The instant action arises out of a series of franchise agreements as well as other accompanying agreements entered into between Plaintiffs GNC Franchising LLC and General Nutrition Corporation (collectively, "Plaintiffs" or "GNC") and Defendants Sohail Khan and Saleem Khan ("Khans") as well as Chaudhry Brothers Corporation (collectively, "Defendants"). According to the Plaintiffs, Defendants failed to make payments on all of their agreements, leading to the instant federal action in which GNC alleges five counts of breach of contract. According to the Khans, Plaintiffs' engaged in deceptive business practices including its corporate competition program favoring corporate stores over franchise stores making it impossible for them to fulfill their contractual obligations, which led to the Khans Defendants filing a separate action in state court alleging breach of contract, negligent misrepresentation, and tortious interference with

existing/prospective business relations, which GNC abruptly removed to this Court. In short, the business relationship between the parties deteriorated, culminating in two federal actions, consolidated herein.

For the following reasons, GNC's Motion for Summary Judgment [DE 56] will be granted in part and denied in part and GNC's Motion to Strike the Declarations of Sohail Khan, Saleem Khan, and Choudhury Muzaffer [DE 66] will be denied as moot.

## FACTS

The Court notes that Defendants failed to provide a concise statement of material facts in response to GNC's Statement of Material Facts (Docket No. 58) ("SOF") in violation of Local Rule 56.1(E).[1] *See* W.D. Pa. L.R. 56.1(E) ("Alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purposes of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party"). As a consequence, for purposes of the instant motion, the facts set forth in Plaintiffs' SOF are deemed admitted by Defendants. *See Ferace v. Hawley*, No. 05-1259, 2007 U.S. Dist. LEXIS 71437, at *2 n.1 (W.D. Pa. Sept. 26, 2007); *Benko v. Portage Area School Dist.*, No. Civ. A. 03-233J, 2006 WL 1698317 (W.D. Pa. June 19, 2006); *Smith v. Burrows Corp.*, No. Civ. A. 00-1972, 2005 WL 2106594 (W.D. Pa. Aug. 31, 2006); *Loving v. Borough of East McKeesport*, No. 2:02CV1727, 2005 WL 3560661 (W.D. Pa. Dec. 29, 2005).

---

[1]

Additionally, the only "facts" noted by Defendants consist of those set forth in the accompanying Declarations as well as sporadic citations to deposition testimony throughout their response brief. (Docket No. 63 at 2-3.) The Court finds that such a presentation of facts does not comply with Local Rule 56.1(E).

Plaintiffs are Pennsylvania corporations with their principal place of business located at 300 Sixth Avenue, Pittsburgh, PA 15222. (Docket No. 4, Plaintiff's Amended Complaint, at ¶¶ 1-2) (hereinafter, "Amended Complaint"). Plaintiff General Nutrition Corporation is a retailer of nutritional and specialty supplements and sports nutrition, diet, and energy products. (Amended Complaint, at ¶ 8). Plaintiff GNC Franchising LLC franchises outlets for the retail sale of nutritional and specialty supplements and sports nutrition, diet and energy products. (Amended Complaint, at ¶ 9). Defendant Sohail Khan is a resident of Chicago, Illinois and acting President of Defendant Chaudhry Brothers Corporation. (Amended Complaint, at ¶ 3). Defendant Saleem Khan is a resident of Des Moines, Iowa and acting Secretary and/or Director of Defendant Chaudhry. (Amended Complaint, at ¶ 4). Defendant Chaudhry is an Iowa corporation with its principal place of business located at 3401 Valley Ridge Court, West Des Moines, IA 50265. (Amended Complaint, at ¶ 5).

Plaintiffs assert that they entered into a series of contracts with Defendants for four GNC franchise stores at the following locations: (1) Ames, Iowa; (2) Altoona, Iowa; (3) Skokie, Illinois; and (4) Des Moines, Iowa. On June 28, 2001, GNC and Defendant Sohail Khan entered into a Franchise Agreement granting Defendant Sohail Khan the right to operate a GNC store located in Ames, Iowa (the "Ames Franchise Agreement"). (SOF at ¶ 1). On September 27, 2001, GNC and Defendant Chaudhry entered into a Franchise Agreement granting Defendant Chaudhry the right to operate a GNC store located in Altoona, Iowa (the "Altoona Franchise Agreement"). (SOF at ¶ 32). On March 22, 2002, GNC and Defendant Sohail Khan entered into a Franchise Agreement granting Defendant Sohail Khan the right to operate a GNC store located in Skokie, Illinois (the "Skokie Franchise Agreement"). (SOF at ¶ 65). On September 19, 2002, GNC and Defendant Sohail Khan

entered into a Franchise Agreement granting Defendant Sohail Khan the right to operate a GNC store located in Des Moines, Iowa (the "Des Moines Franchise Agreement"). (SOF at ¶ 90). In connection with each of the franchise agreements, the parties executed promissory notes[2] (*see* SOF at ¶¶ 16, 49, 106) and product sales agreements (*see* SOF at ¶¶ 11, 44, 75, 100) (hereinafter collectively, "Associated Agreements") as well as subleases (*see* SOF at ¶¶ 28, 61, 86, 112).

On January 20, 2005, as a result of non-payment, Plaintiffs served Defendants with financial default notices for all four stores, in which, Plaintiffs stated that Defendants did not dispute the outstanding financial balances but they failed to cure the deficiencies. (SOF at ¶¶ 116-118). On March 1, 2005, Plaintiffs prepared a short-term payment plan requiring Defendants Sohail Khan and Saleem Khan to make certain note, rent, royalty, and advertising payments ("Payment Plan"). (SOF at ¶ 119). Plaintiffs assert that Defendants Sohail Khan and Saleem Khan failed to fully discharge their obligations listed in the Payment Plan. (SOF at ¶ 121). As a result, on June 17, 2005, Plaintiffs terminated each Franchise Agreement and Sublease. (SOF at ¶ 122).

## PROCEDURAL HISTORY

On September 26, 2005, Plaintiffs filed their original Complaint. (Docket No. 1). On January 11, 2006, Plaintiffs filed an Amended Complaint. In their Amended Complaint, Plaintiffs assert the following claims: (1) breach of contract against Defendant Sohail Khan for the Ames,

---

[2]

In conjunction with the Ames Franchise Agreement, the Altoona Franchise Agreement, and the Skokie Franchise Agreement, the parties executed a revised promissory note per agreement. (SOF at ¶¶ 22, 55, 80). The Court notes that Plaintiffs did not state when the promissory note for Skokie Franchise Agreement was signed but assumes that one was agreed upon by the evidence of the revised promissory note. Moreover, the parties signed a general release agreement with relation to the Altoona Franchise Agreement, the Skokie Franchise Agreement, and Des Moines Franchise Agreement. (SOF at ¶¶ 35, 66, 91).

Skokie, and Des Moines Franchise Agreements as well as the Skokie and Des Moines Product Sales Agreements and Promissory Notes, in which Plaintiffs claim that Plaintiff GNC Franchising performed all obligations under each agreement and Defendant Sohail Khan failed to make payments for royalties, advertising, and finance fees and therefore is in default of his obligations; (2) breach of contract against Defendant Chaudhry for the Ames and Altoona Franchise Agreements, in which Plaintiffs claim that Plaintiff GNC Franchising performed all obligations under each agreement and Defendant Chaudhry failed to make payments for royalties, advertising, and finance fees and therefore is in default of its obligations; (3) breach of contract against Defendants for the Ames and Altoona Product Sales Agreements, Promissory Notes, and Revised Promissory Notes, in which Plaintiffs claim that Plaintiff GNC Franchising performed all obligations under each agreement and Defendants failed to make payments for royalties, advertising, and finance fees and therefore are in default of their obligations; (4) breach of contract against Defendant Sohail Khan for the Ames, Skokie, and Des Moines Subleases, in which Plaintiffs claim that Plaintiff GNC Franchising performed all obligations under each agreement and Defendant Sohail Khan failed to make payments and therefore is in default of his obligations; (5) breach of contract against Defendants for the Altoona Sublease, in which Plaintiffs claim that Plaintiff GNC Franchising performed all obligations under each agreement and Defendants failed to make payments and therefore is in default of his obligations. (Amended Complaint at 8-14). On February 1, 2006, Defendants filed their Answer to Amended Complaint. (Docket No. 7).

On March 3, 2006, GNC Franchising LLC, formerly known as GNC Franchising, Inc., removed to this Court a Complaint originally filed in the Court of Common Pleas of Allegheny

County, Pittsburgh, Pennsylvania, filed by the Khans on or about January 4, 2006. This second action was filed at Civil Action No. 06-00283.

Subsequently, on March 21, 2006, Judge Arthur J. Schwab, the former presiding Judge on the instant matter[3], ordered that the Complaint at Civil Action No. 06-283 filed by the Khans be consolidated with this action (as the lead case) "for all purposes." (Docket No. 14, at 1).[4]

On July 16, 2007, Plaintiffs filed GNC's Motion for Summary Judgment and Brief in Support. (Docket Nos. 56 & 57) (collectively, "Plaintiffs' Motion"). On August 10, 2007, Defendants filed their Memorandum of Law in Opposition to Motion for Summary Judgment. (Docket No. 63) ("Defendants' Opposition"). On August 17, 2007, Plaintiffs filed their Reply in Support of GNC's Motion for Summary Judgment, (Docket No. 64), as well as GNC's Motion to Strike the Declarations of Sohail Khan, Saleem Khan, and Choudhury Muzaffer. (Docket No. 65). On August 27, 2007, Plaintiffs filed a Notice of Recent Third Circuit Opinion, attaching a recent, not precedential Opinion, which, Plaintiffs assert, support their position. (Docket No. 67). On August 28, 2007, Defendants filed their Response in Opposition to GNC's Motion to Strike the Declarations of Sohail Khan, Saleem Khan and Choudhury Muzaffar. (Docket No. 68). On September 4, 2007, Plaintiffs filed their Reply in Support of GNC's Motion to Strike the Declarations of Sohail Khan, Saleem Khan and Choudhury Muzaffar. (Docket No. 71).

Accordingly, both motions are fully briefed and ripe for disposition.

---

[3]

On April 23, 2007, this case was reassigned to the undersigned Judge.

[4]

Accordingly, for ease of reference, the Court will refer to the claims alleged in the Complaint at Civil Action No. 06-283 as the Khans' counterclaims.

## CHOICE OF LAW

The Franchising Agreements as well as the Sales Agreements and the Sublease Agreements provide for the application of the law of the Commonwealth of Pennsylvania. Moreover, neither of the parties raise choice of law but instead both Plaintiffs and Defendants cite to and rely upon Pennsylvania law. *Rochez Bros., Inc. v. North American Salt Co., Inc.*, Civ. A. No. 94-1131, 1994 WL 735932, at *6 n.8 (W.D. Pa. 1994) (citing *Schiavone Construction Co. v. Time, Inc.*, 735 F.2d 94, 96 (3d Cir. 1984)) ("Because the parties appear to implicitly agree on the applicable choice of law, this Court will not challenge their decision"). Therefore, the Court finds that Pennsylvania law applies in all instances in this matter.

## STANDARD

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).

In evaluating the evidence, the Court must interpret facts in the light most favorable to the non-moving party, and draw all reasonable inferences in their favor. *Watson v. Abington Twp.*, 478

F.3d 144, 147 (3d Cir. 2007). Initially, the burden is on the moving party to demonstrate that the evidence in the record creates no genuine issue of material fact. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 249. The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment. *Horta v. Sullivan*, 4 F.2d 2 (1st Cir. 1993) (citing Wright and Miller, Federal Practice § 2721); *Pollack v. City of Newark,* 147 F. Supp. 35, 39 (D.N.J. 1956), *aff'd*, 248 F.2d 543 (3d Cir. 1957), *cert. denied*, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

While the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the admissible evidence in the record would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322-323. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. The nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

**ANALYSIS**

The Plaintiffs seek summary judgment as to the claims alleged in their Amended Complaint as well as the counterclaims alleged by the Khans. The Court will consider each in turn.

I.     *Plaintiff's breach of contract claims*

Plaintiffs argue that they are entitled to summary judgment as to all five breach of contract counts in their Amended Complaint because "[i]t is uncontroverted that the Khans have not paid GNC Franchising LLC money owed under the Franchise Agreements and Associated Agreements" and "[i]t is uncontroverted that the Khans have not paid General Nutrition Corporation money owed under the Subleases." (Plaintiffs' Motion at 5-6). Plaintiffs assert that not only have the Khans failed "to honor their payment obligations" set forth in the Franchise Agreements, Associated Agreements, and Subleases, but they concede as much. (*Id.* at 5, 6). In particular, Plaintiffs contend that the Khans have "admitted that they: (1) stopped making the payments due to GNC, (2) never disputed the outstanding financial balances identified in the Default Notices, (3) did not cure the deficiencies identified in the Default Notices, and (4) never disputed the outstanding financial balances identified in the Termination Notices." (*Id.* at 3).

Based on their response brief, it is unclear whether (and specifically how) Defendants oppose Plaintiffs' motion for summary judgment as to the five breach of contract claims in their Amended Complaint. On the contrary, Defendants' Opposition reads as a defense of their counterclaim at Count I for breach of contract and the implied covenant of good faith and fair dealing. Nevertheless, to the extent it can, the Court will analyze these arguments.

"Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty

imposed by the contract[,] and (3) resultant damages." *Inoff v. Craftex Mills, Inc.*, Civil Action No. 06-3675, 2007 WL 4355385, at *8 (E.D. Pa. Dec. 11, 2007) (internal quotation and end citations omitted) (alteration in original).

First, as to the existence of a contract and its essential terms, Plaintiffs and Defendants entered into numerous agreements, specifically the Franchise Agreements, Associated Agreements, and Sublease Agreements, which were valid and binding contracts.[5] Defendants do not dispute this.

Second, as to the breach of a duty imposed by the above noted agreements, the following is undisputed: (1) the Franchise Agreements required Defendants to remit royalty payments, advertising fees, and other associated charges to Plaintiff when due[6]; (2) the Associated Agreements required Defendants to remit other monthly payments to Plaintiff for inventory purchased as well as note payments[7]; and (3) the Sublease Agreements required Defendants Sohail Khan and Chaudhry to remit monthly rent payments to Plaintiff.[8] Again, Defendants do not dispute the fact that they were required to make payments with regard to the Franchise Agreements, Associated Agreements and Sublease Agreement, and, in fact, "Defendants concede that they have not paid GNC Franchising, LLC money owed under the various franchise agreements, associated agreements, and subleases which are the subject of this action." (Defendants' Opposition at 3-4; SOF at ¶¶ 124-136). *See GNC Franchising LLC v. Farid*, Case No. 2:05-cv-1741, 2007 WL 1437443, at *1 (W.D. Pa. May 14,

---

[5] SOF at ¶¶ 1-3, 11, 16, 22, 28, 32-34, 44, 49, 55, 61, 65, 75, 80, 86, 90, 100, 106, 112.

[6] SOF at ¶¶ 4, 6, 37, 39, 68, 70, 93, 95.

[7] SOF at ¶¶ 12, 17, 23, 45, 50, 56, 76, 81, 101, 107.

[8] SOF at ¶¶ 30, 63, 88, 114, 116-118, 122-123.

2007) (granting summary judgment as to plaintiffs' breach of contract counts where defendants conceded breach). Therefore, as to the first and second elements of breach of contract, Defendants apparently concede the same.

Third, as to damages, Plaintiffs assert that as a result of Defendants' breach, they suffered damages in the amount owed.[9] (Docket No. 56 at 4).

Damages are a fundamental and essential element to a breach of contract action. *See Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 878 (3d Cir. 1995). In *Fishkin v. Susquehanna Partners, G.P.*, Case No. 03-3766, 2007 U.S. Dist. LEXIS 10562 (E. D. Pa. Feb. 13, 2007), the Court noted the following as to the burden of proof for establishing damages:

> Under Pennsylvania law, the party alleging a breach of contract has the burden of proving damages resulting from that breach. Damages must be established with "*reasonable certainty*" and may not be recovered if they are too speculative, vague or contingent. Proof of the exact amount of loss or a precise calculation of damages, however, is not required as long as the evidence "with a fair degree of probability" establishes a basis for the assessment of damages.

*Id.* at *6-7 (internal citations omitted) (emphasis added). Here, Plaintiffs fail to establish with a reasonably certainty their damages resulting from the breach of the franchise agreements. While Plaintiffs state that they suffered damages "in the amount of $1,503,618.56" at the conclusion of Plaintiff's Motion, (*see* Docket No. 56 at 4 and Docket No. 57 at 18), they neither argue damages in their motion nor direct the Court to any evidence with respect to damages.[10] Thus, Plaintiffs have

---

[9]

SOF at ¶¶ 8, 14, 19, 25, 31, 41, 47, 52, 58, 64, 72, 78, 83, 89, 97, 103, 109, 115, 118, 122.

[10]

Nevertheless, the Court notes that the record reveals by way of declaration four tables reflecting the alleged outstanding balances that Defendants owed to Plaintiff with regard to each franchise store. (Docket No. 59-15, at ¶¶ 16, 29, 41, 53) (Declaration of Nancy King). However, the Court finds that this evidence does not establish a reasonable certainty of Plaintiffs' damages.

failed to prove the amount of damages on its breach of contract claim and therefore, Plaintiffs are not entitled to summary judgment with respect to damages. *See King v. GNC Franchising, Inc.*, Case No. 04-5125, 2007 U.S. Dist. LEXIS 37547, at *8 (D.N.J. May 23, 2007) (applying New Jersey law[11] and finding that the defendants failed to prove the amount of damages on a breach of contract claim and were not entitled to summary judgment with respect to damages as a result).[12]

Accordingly, Plaintiffs' motion for summary judgment as to their five breach of contract claims will be granted as to liability but denied as to damages.[13]

---

Furthermore, material issues of fact exist as to the amount of damages because the record reflects that Defendants have paid some of the amounts required under the agreements. (*See* Docket No. 59-16 at 115:20-25 - 116:1-4) ("Q: GNC loaned you $477,243.62? ... A: I don't know how much we paid, but we have paid. Q: You haven't paid in full, though, have you? A: No, we paid quite a bit").

[11]

Both Pennsylvania and New Jersey require the same standard as to damages, i.e., a reasonable degree of certainty. *See Spang & Co.*, 545 A.2d at 866; *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 219 F.Supp.2d 600, 605 (D.N.J. 2002) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1176 (3d Cir. 1993)).

[12]

The Court notes that in *King*, the same Plaintiffs as in present matter briefed and argued the element of damages, and therefore, the Court completed an analysis with respect to the same. On the contrary here, Plaintiffs have not briefed damages in any substantive manner.

In addition, assuming *arguendo* that Plaintiffs met their burden as to establishing damages, based on the evidence currently before the Court, material issues of fact exist as to the exact amount of damages owed by the Khans as to at least some of the Plaintiffs' breach of contract claims. *See* Docket No. 59-16, at 62:14-22 ("Q: Did you pay royalty fees to GNC? A: We were paying. Q: Is that a yes? A: Yes. Q: Did you pay national advertising fees? A: Yes. Q: And you paid other associated charges relating to this agreement? A: Whatever those were"); Docket No. 59-16, at 115:22-116:4 ("Q: And you agreed to pay [$477,243.62] back with interest, didn't you? A: Yes. Q: Have you paid that money back? A: I don't know how much we paid, but we have paid. Q: You haven't paid in full, though, have you? A: No, we paid quite a bit") (Deposition of Sohail Khan).

[13]

The Court notes that while Defendants fail to directly respond to Plaintiffs' breach of contract claims, the Khans' counterclaims for breach of contract and the implied covenant of good faith and fair dealing assert that Plaintiffs did not comply with the terms of the relevant agreements, which

*II.    Defendants' counterclaims*

    *1.    Breach of contract*[14]

Plaintiffs argue that there is no evidence that they failed to honor a contractual promise owed

to the Khans and the Khans fail to cite as much.  Moreover, Plaintiffs assert that the Khans'

counterclaim as to breach of contract merely recites a "laundry list of the Khans' grievances against

GNC Franchising LLC, with no reference at all to the terms of the Franchise Agreements."

(Plaintiffs' Motion at 7).  Plaintiffs assert that under the terms of the Franchise Agreements, they are

authorized to do all the activities about which the Khans complain.  In turn, the Khans fail to respond

to Plaintiffs' arguments and seemingly abandon their breach of contract claim by proceeding directly

to a discussion of the alleged breach of the implied covenant of good faith and fair dealing.

The Court finds that Defendants' breach of contract counterclaim fails for two reasons.  First,

Defendants fail to specifically point to any provision in any of the Agreements (either in the

Amended Complaint or in Defendants' Opposition) entered into between GNC and the Khans that

Plaintiffs allegedly breached.[15]  Second, as noted above, Defendants failed to directly respond and

---

assertion implicitly refutes Plaintiffs' motion for summary judgment as to the five breach of contract counts.  Nevertheless, as the Court determines *supra*, the Khans' counterclaims fail as well.

[14]

While Defendants plead their claims for breach of contract and the breach of the implied covenant of good faith and fair dealing under Count I together, the Court will nevertheless address the same separately as two independent claims.

[15]

Furthermore, the record shows that the Khans failed to produce any evidence in support of their breach of contract claims. (*See* SOF at ¶ 143) ("Sohail Khan could not identify a single instance where GNC Franchising LLC failed to honor a contractual obligation that it owed Sohail Khan") (citing passages to the Deposition of Sohail Khan); (SOF at ¶ 160) ("Saleem Khan could not identify a single instance where GNC Franchising LLC failed to honor a contractual obligation that it owed Saleem Khan") (citing passages to the Deposition of Saleem Khan).  For example, Defendant Sohail Khan replied either "I don't know", "I don't remember," or "I don't think so," when asked whether

address Plaintiffs' argument as to their breach of contract claim. Rather, Defendants apparently seek to rely on their pleadings, which, of course, they cannot do. *Shallcross v. Path Truck Lines*, 2006 U.S. Dist. LEXIS 3375, at *4 (W. D. Pa. Jan. 30, 2006) (citing *Celotex*, 477 U.S. at 324) ("Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial").

Accordingly, because Defendants failed to offer any evidence (or even argument) in support of their breach of contract counterclaim, the burden for which they would have borne at trial, *see A. Natterman & CIE GmBH v. Bayer Corp.*, 428 F. Supp. 2d 253, 257 (E. D. Pa. 2006); *Scarpone v. Dionisio*, Case No. 04-3140, 2007 U.S. Dist. LEXIS 19496, at *21 (D.N.J. March 20, 2007), GNC's motion for summary judgment as to the Khans' counterclaim for breach of contract will be granted.

2.      *Implied Covenant of Good Faith and Fair Dealing*

Plaintiffs argue that Pennsylvania law does not recognize a breach of the implied duty of good faith and fair dealing in the context alleged by the Khans. The Khans respond asserting that Pennsylvania law recognizes a duty of good faith and fair dealing in all contracts. Further, Defendants contend that Plaintiffs breached the covenant of good faith and fair dealing by (1) imposing unreasonable standards of performance on the Defendants; (2) competing directly with the Defendants, making it impossible for them to successfully operate their franchise stores; and (3)

---

GNC failed to honor an obligation respecting the Ames Promissory Note, the Ames Sublease, the Altoona Promissory Note, the Altoona Revised Promissory Note, the Altoona Sublease, the Skokie Franchise Agreement, the Skokie Product Sales Agreement, the Skokie Sublease, the Des Moines Franchise Agreement, the Des Moines Product Sales Agreement, and the Des Moines Sublease. (*See* Docket No. 59-16 at 109:11-12, 110:25, 112:21, 113:6, 114:7, 114:16, 115:14-15, 117:18-19, 118:10-11, 119:15-16) (Deposition of Sohail Khan).

improperly converting or using advertising fees. (Defendants' Opposition at 2-3). Relying on the

Declarations of Sohail Khan and Saleem Khan, Defendants specifically cite to following as evidence:

1. Defendants learned that in close proximity to their Altoona franchise, Plaintiff operated its own store as a "competition store" which enabled to Plaintiff to sell products at discounted prices and lured away customers.

2. After purchasing the Des Moines corporate store, Defendants were unable to operate successfully as a franchise store because Plaintiff failed to provide the product discounts which Plaintiff used when it operated the store.

3. Plaintiff began targeting and soliciting Defendants' Des Moines Gold Card members with coupons directing them to other nearby corporate stores.

4. Plaintiff engaged in very little advertising to help promote Defendants' stores.

(Defendants' Opposition at 5-7). In summary, Defendants assert that Plaintiffs' misconduct and

deceptive business practices led to their financial ruin.

As an initial point, the Pennsylvania Supreme Court has held that the duty of good faith and

fair dealing is "applicable *only* in context of an attempt on the part of the franchisor to terminate its

relationship with the franchise." *Witmer v. Exxon Corp.*, 434 A.2d 1222, 1227 (Pa. 1981) (emphasis

added); *see also Atlantic Richfield Co. v. Razumic*, 390 A.2d 736, 742 (Pa. 1978). To this date, the

Pennsylvania Supreme Court has yet to extend the duty of good faith beyond the context of

termination. Therefore, courts are left to predict what the Pennsylvania Supreme Court might do.

*See Coxfam, Inc., et al. v. AAMCO Transmissions, et al.*, Case No. 88-6105, 1990 U.S. Dist. LEXIS

11838, at *18 (E.D. Pa. Sept. 7, 1990).

In support of their argument, Defendants rely on *AAMCO Transmission, Inc. v. Harris*, 759

F.Supp. 1141 (E.D. Pa. 1991), in which the Court predicted that "it seems unlikely that the

Pennsylvania appellate courts will limit the franchisor's duty to deal in good faith to situations of

franchise termination when the issue is squarely presented." *Id*. at 1148-49. In response, Plaintiffs assert that, in most cases, courts have not applied the duty of good faith beyond the context of termination absent some indication from the Pennsylvania Supreme Court. *See Bishop v. GNC Franchising LLC*, 403 F. Supp. 2d 411, 419 (W.D. Pa. 2005), *aff'd* 2007 U.S. App. LEXIS 20087 (3d Cir. August 23, 2007); *Coxfam, Inc.*, 1990 U.S. Dist. LEXIS, at *19; *Keshock, et al. v. Carousel Systems, Inc.*, et al., Case No. 04-758, 2005 WL 1198867, at *3 (E.D. Pa. May 17, 2005).

In short, while Defendants point to a couple of cases predicting that the Pennsylvania Supreme Court would recognize the implied covenant of good faith and fair dealing, Plaintiffs rely on the seeming weight of authority indicating to the contrary–and the Court agrees.

Addressing this precise issue, the *Bishop* Court noted the following:

> The duty of good faith and fair dealing is limited to special types of contracts, involving special relationships between the parties. In the context of franchise of agreements, a franchisor has a duty to act in good faith and with commercial reasonableness when terminating a franchise for reasons not explicit in the agreement. *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736, 742 (Pa. 1978).

*Bishop*, 403 F.Supp.2d at 418. Absent "clear guidance from the Supreme Court of Pennsylvania or the Court of Appeals for the Third Circuit," the *Bishop* Court declined to extend the scope of the duty. *Id.* at 419.

In support of their argument that the duty of good faith and fair dealing applies in all contracts under Pennsylvania law, the Khans rely on *AAMCO*, which, in turn, relied on *Creeger Brick and Bldg. Supply v. Mid-State Bank & Trust Co.*, 385 Pa. Super. 30, 35 (1989). However, the intermediate appellate court in *Creeger* did not involve a franchise relationship; rather, the dispute there stemmed from a borrower's claim against a lending institution. Thus, "*Creeger* cannot fairly be cited for the proposition that the implied duty of good faith should be broadly construed or

extended." *AAMCO Transmissions, Inc. v. Marino*, Case Nos. 88-5522, 88-6197, 1991 U.S. Dist. LEXIS 18380, at *8 (E.D. Pa. Jan. 2, 1992). Accordingly, based on the case law and absent any clear indication from the Pennsylvania Supreme Court or the United States Court of Appeals for the Third Circuit, the Court declines to extend the implied duty of good faith and fair dealing beyond the context of termination of a franchise agreement. Therefore, Defendants' first three allegations, which attempt to fault GNC for failure to act in good faith concerning the performance of the franchise agreements, as to its implied duty of good faith and fair dealing counterclaim will be denied.

With regard to the fourth allegation encompassed in the Khans' duty of good faith and fair dealing counterclaim, i.e., wrongful termination, Plaintiffs argue that the termination did not involve reasons other than those expressed in the Franchise Agreements. In fact, Plaintiffs maintain the termination was caused by Defendants' default by their failure to meet their payment obligations. In response, the Khans fail to specifically address Plaintiffs' argument as to the wrongful termination.

In *Player v. Motiva Enters. LLC*, 240 Fed Appx. 513 (3d Cir. 2007), the Third Circuit provided the following guidance:

> Plaintiffs argue that the District Court erred by granting summary judgment in favor of [defendant] without addressing their claim that [defendant]'s negligence caused them to suffer a loss of quality of life. However, in response to [defendant]'s motion for summary judgment, Plaintiffs did not mention their claim for lost quality of life. We have held that, where the party opposing a motion for summary judgment bears the ultimate burden of proof, the moving party may discharge its initial burden of showing that there is no genuine issue of material fact by " 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *UPMC Health Sys. v. Metro. Life Ins. Co.,* 391 F.3d 497, 502 (3d Cir. 2004). If the moving party has satisfied its

> initial burden, the nonmoving party must, in their opposition to the motion, identify evidence of record that creates a genuine issue of material fact. *Childers v. Joseph,* 842 F.2d 689, 694-95 (3d Cir.1988). The nonmoving party cannot later argue, on appeal, that there is evidence in the record that creates a genuine issue of material fact, if that evidence was not pointed out to the district court at the time of the motion for summary judgment. *Id.* at 694. Assuming there is such a claim to be made, Plaintiffs never argued to the District Court that there was a genuine issue of material fact regarding their claim for lost quality of life. Consequently, they cannot now argue that the District Court erred by failing to consider it.

*Id.* at 522, n.4 (internal citations omitted). Numerous courts within this District have drawn the same conclusion. *Childers v. Joseph*, 842 F.2d 689, 694 n.4 (3d Cir. 1988). *See also Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003) (granting summary judgment because plaintiff failed to address one of the defendant's arguments in his summary judgment motion, which resulted in the plaintiff's waiver of the opportunity to contest summary judgment on that ground); *Evans v. Nine West Group, Inc.*, Case No. 00-4850, 2002 U.S. Dist. LEXIS 6427, at *12-13 (E.D. Pa. Apr. 15, 2002) (finding that the plaintiff abandoned a claim by failing to assert the claim in her opposition to defendant's summary judgment motion: "Under analogous circumstances, courts both within and beyond the Third Circuit routinely have held the claim at issue to have been abandoned"); *Hackett v. Cmty. Behavioral Health*, Case No. 03-6254, 2005 U.S. Dist. LEXIS 8410, at *23 (E. D. Pa. May 6, 2005) (finding that the plaintiff only addressed her retaliation claims but not her race and gender discrimination claims, therefore, she abandoned the latter claims); *Bell v. Quest Diagnostics*, Case No. 04-5005, 2006 U.S. Dist. LEXIS 4761, at *21 (E.D. Pa. Feb. 8, 2006) (granting summary judgment where the plaintiff did not respond to the defendant's motion on harassment claims, and conceded at oral arguments that she did not opposing the Court's granting of summary judgment in favor of the defendant on those claims). Because Plaintiffs have satisfied their initial burden by

pointing out the absence of evidence to support the Khans' wrongful termination claims as well as offered evidence to support the fact that Plaintiffs upheld the implied duty of good faith in terminating Defendants' Franchise Agreements, and because the Khans wholly failed to address this counterclaim in their response but instead (seemingly) relied on their pleadings thus abandoning their counterclaim, the Court need not reach the merits.[16] Hence, Plaintiffs' motion for summary judgment as to the Khans' counterclaim for breach of the implied duty of good faith and fair dealing as to the termination of the Agreements will be granted.

### 3. Fraudulent inducement and negligent misrepresentation

Plaintiffs argue that Defendants' claim for "fraudulent inducement/negligent misrepresentation" must fail because (1) there is no evidence that the Defendants relied on any statement in the Uniform Franchise Offering Circular to their detriment; (2) the general release in the Franchise Agreements bars Defendants' claim; (3) the "gist of the action" doctrine bars

---

[16]

Nevertheless, the Court notes that "Saleem Khan testified that GNC Franchising LLC wrongfully terminated the Franchise Agreements by forcing the Khans to fail ACE reports." (SOF at ¶ 167; Docket No. 59-17 at 105:20-23). However, Defendant Saleem Khan conceded that "the Ames Default Notice and the Altoona Default Notice did not mention that the Khans had failed an ACE report." (SOF at ¶ 168; Docket No. 59-17 at 104:12-25 & 105:1-19). In response to the same question, Defendant "Sohail Khan testified that GNC Franchising LLC wrongfully terminated the Franchise Agreements by failing to restructure the Khans' loans and restock their shelves with inventory, as orally promised." (SOF at ¶ 159; Docket No. 59-16 at 133:8-25 & 135:1-17). However, the record shows that the Franchise Agreements expressly prohibited oral modifications. (SOF at ¶ 181) ("The Franchise Agreements provide that '[n]o amendment, change, or variance from this Agreement shall be binding on the parties unless mutually agreed to by the parties and executed by themselves ... in writing' ") (citing Docket No. 59-2 at 44 (XXIV), Docket No. 59-5 at 44 (XXIV), Docket No. 59-9 at 46 (XXVI), Docket No. 59-12 at 46 (XXVI)). Thus, because the franchise agreements prohibit what Defendants argue, their claim fails. *See Bishop v. GNC Franchising LLC*, 248 Fed.Appx. 298, 300 (3d Cir. 2007) ("To the extent that the Bishops are arguing that an implied covenant of good faith overrides contractual terms, such an override has not been recognized by the Pennsylvania courts except in the context of franchise terminations").

Defendants' claim; or (4) the merger clause in the Franchise Agreements bars Defendants' claim. (Docket No. 57 at13-16).

As an initial point, the Court notes that while the Khans' make vague references to allegations of fraudulent inducement in their counterclaim, Count II on its face pleads a claim for negligent misrepresentation, only. *See Khan, et al v. GNC Franchising, LLC*, Case No. 06-CV-00283-WLS, at Docket No. 1, at ¶¶65-76.[17]  However, in its motion, GNC construes Count II as a claim for "fraud and negligent misrepresentation," noting that while Pennsylvania law recognizes two separate claims for the same, Defendants pled them as one claim in their Complaint and therefore Plaintiffs addressed the merits as to each.  (Docket No. 57 at 13, n.7).  Hence, the Court will address Count II under the assumption that Defendants pled a claim for fraudulent inducement as well as negligent misrepresentation.

Under Pennsylvania law, fraudulent misrepresentation or fraudulent inducement has six elements:  (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Overall v. University of Pa.*, 412 F.3d 492, 498 (3d Cir. 2005) (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)).  "To succeed on this claim, a plaintiff must prove each element by clear and convincing evidence." *Hershey Entertainment & Resorts Co. v. Interactive Rides, Inc.*, No. 1:04 CV 2641, 2005 WL 3320843, at *7 (M.D. Pa. Dec. 7, 2005) (citing *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 136 n. 8 (3d Cir. 2005)).

---

[17] Moreover, Defendants missed an opportunity to clarify the issue by failing to respond to Plaintiffs' arguments as to Count II.

In *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 287 (Pa. 2005), the

Pennsylvania Supreme Court officially adopted the Restatement (Second) Torts, § 552 (1977), which

sets forth the elements of a cause of action for negligent misrepresentation, which provides in

relevant part:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Tredennick v. Bone*, Civil Action No. 07-0735, 2007 WL 4244652, at *6 (W.D. Pa. Nov. 29, 2007).

*See also Gilliland v. Hergert*, No. 2:05-cv-01059, 2007 WL 4105223, at *6 (W.D. Pa. Nov. 19,

2007) ("Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2)

made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an

intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable

reliance on the misrepresentation") (citing *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999)).

In their Opposition, the Khans also fail to address Plaintiffs' arguments as to the fraudulent

inducement claim or the negligent misrepresentation claim. *See Player*, 240 Fed Appx. At 522, n.4.

Because Plaintiffs have satisfied their initial burden by pointing out the absence of evidence to

support the Khans' negligent misrepresentation and because the Khans have wholly failed to address

this counterclaim in their response but instead (seemingly) have abandoned their claim, the Court

need not reach the merits.[18]  Therefore, GNC's motion for summary judgment as to the Khans' counterclaims for fraudulent inducement and negligent misrepresentation will be granted.

4.    *Tortious Interference with Defendants' Existing or Prospective Contracts*

Plaintiffs argue that there is no evidence that GNC interfered with the Khans' existing or prospective contracts.  (Docket No. 57, at 16).  In particular, Plaintiffs contend that the Khans concede that they had no contractual relationship with a third party or intended to enter into such a relationship and further assert that the Khans have failed to produce any evidence of damages flowing from the alleged tortious interference with either existing or prospective business relations. Relying on the deposition testimony of Saleem Khan, the Khans respond arguing that issues of fact remain as to their claim for "tortious interference with a prospective contract" insofar as he "set out to enter [into] business relationships with various third party vendors ... ."  (Docket No. 63, at 10). In reply, Plaintiffs argue that Defendant Saleem Khan's actual testimony demonstrates to the contrary.

"The elements of a claim for tortious interference with existing and prospective contract are: (1) existence of a contract or prospective contract; (2) purposeful action specifically intended to harm

---

18

Notwithstanding, the Court notes that the Khans fail to meet the fifth prong of their fraudulent inducement claim and the fourth prong of their negligent misrepresentation claim, i.e., justifiable reliance.  At Count II, the Khans argue that they relied on the "Complex Litigation" section of GNC's Uniform Franchise Offering Circular ("UFOC") when determining whether to purchase a GNC franchise because "they sought to evaluate the integrity of the franchisor." (Docket No. 59-25 at 15).  However, the record shows no evidence that Defendants relied on the UFOC's Complex Litigation section.  Rather, the Khans both testified that Count II turned on GNC's alleged promises to restructure the Khans' loans and restock their selves, which is the same argument as their breach of contract claims.  (Docket No. 59-16 at 140:16-25 & 141:1-11; Docket No. 59-17 at 96:7-17 & 97:1-3).  Neither of the Khans testify to any kind of misrepresentation by Plaintiffs that Defendants relied upon when determining whether to purchase a franchise.  Thus, Defendants' abandonment of these claims, tellingly, demonstrates that the claims are without merit.

the existing relationship or to prevent the relationship from occurring; (3) the absence of privilege or justification; and (4) actual damages." *Latuszewski v. Valic Financial Advisors, Inc.*, Civil Action No. 03-0540, 2007 WL 4462739, at *19 (W.D. Pa. Dec. 19, 2007) (citing *Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. 1997)).

First, as to an existing business relationship, Defendants have not established through the presentation of evidence or even alleged by way of argument an existing contract between themselves and a third party. Accordingly, GNC's Motion for Summary Judgment as to the Khans' counterclaim for tortious interference with an existing contractual relationship will be granted.[19]

---

[19]

Additionally, the Court notes that Defendants failed to address (or defend) their claim for tortious interference with an existing business relationship in their response brief and thus, for the same reasons stated above as to Defendants' negligent misrepresentation claim, *see infra*, the Court finds that they have abandoned the same.

Moreover, the record demonstrates that Defendants did not have a contractual relationship with any third party at the time of the cause of action. Defendant Sohail Khan testified:

> Q: And in your own words, I just want you to describe generally, the ways that GNC interfered with your existing contractual relationships that you had with a third party or direct purchase vendor?
> A: He can give you a better answer to that, because he was in the operation business.
> Q: Let the record reflect that Mr. Khan was pointing and referring to his brother, Saleem Khan. Are you aware of any contractual relationships that you had with a third party.
> A: I was not dealing with third parties.

(Docket No. 59-16 at 142:19-25 & 143:1-6). Additionally, Defendant Saleem Khan testified:

> Q: Did you have a contractual relationship with any third party?
> ....
> Q: I'm just asking if you had a contract --
> A: No, I did not.

(Docket No. 59-17 at 97:9-25 & 98:1-6). (*See generally*, SOF at ¶¶ 197-200).

Second, as to a prospective business relationship, the Khans assert that the deposition testimony of Saleem Khan "clearly demonstrates that at the very least, questions of fact exist as to each of the elements required to make Defendants' claim for tortious interference with a prospective contract." (Docket No. 63, at 10). Specifically, Saleem Khan testified in his deposition that he had set out to enter into business relationships with various third-party product vendors, including MuscleTech, for the purposes of purchasing such products at prices lower than those offered by GNC. (Docket No. 63 at 10-11). Defendant Saleem Khan further explained that the Plaintiffs thwarted his efforts based on GNC's express prohibition of third-party vendors from selling their products directly to the franchisees." (Docket No. 63 at 11).

A "prospective contractual relationship" is " 'something less than a contractual right, something more than a mere hope.' " *Santana Prods., Inc. v. Bobrick Washroom Equip.*, 401 F.3d 123, 140 (3d Cir. 2005) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 208, 412 A.2d 466, 471 (1979)). The Third Circuit interprets Pennsylvania law to require a plaintiff to demonstrate "an objectively reasonable probability that a contract will come into existence." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 184 (3d Cir. 1997) (holding that plaintiff's discussions with a law firm led to a more definite employment prospect and established an interference with prospective contractual relations claim); *see also Glenn v. Point Park College*, 272 A.2d 895, 898-99 (Pa. 1971) ("We are not here dealing with certainties, but with reasonable likelihood or probability. This must be something more than a mere hope or the innate optimism of the salesman"). Significantly in *Glenn*, the Pennsylvania Supreme Court highlighted that "[t]his is an objective

standard which of course must be supplied *by adequate proof*." *Id.* at 899 (emphasis added).[20]

Applying this standard, in *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466 (Pa. 1979), the Pennsylvania Supreme Court reiterated the application of an objective standard but determined there that "the fact that the parties agreed to extend this year-to-year lease only until the specifically mentioned date of March 1, 1975 would provide no reasonable basis for either party to expect a perpetuation of the leasehold beyond that point or the acquisition of title to the property interests therein." *Id.* at 472. Thus, the Court explained, appellants had failed to establish facts to demonstrate a prospective business relationship. *See also Schulman v. J.P. Morgan Inv. Management, Inc.*, 35 F.3d 799, 809 (3d Cir. 1994) (holding that plaintiff had not established a tortious prospective contractual interference claim because the defendant, as mortgagee, was privileged to interfere in prospective economic advantage in order to protect its own financial interest).

The only evidence offered in support of its claim that Defendant Saleem Khan "set out to enter [into] business relationships" is his own self-serving deposition testimony.[21] Defendants direct the Court to numerous passages in Saleem Khan's deposition, none of which however establish a

---

[20]

In *Glenn*, the Court held that the plaintiffs had established with reasonable likelihood that they had a prospective broker relationship with a third party in which plaintiffs pled actual sales prices and that the defendant interfered with that prospective relationship by directly negotiating with the third party.

[21]

In addition, the Court notes that the Khans did not attach a copy of the transcript of Defendant Saleem Khan's deposition to its response brief. Instead, they (presumably) assumed that the Court would look to the deposition transcript attached to Plaintiffs' motion. However, Plaintiffs only attached portions of Defendant Saleem Khan's deposition, some of which overlapped with the cited passages by the Khans and some of which did not. As to the latter, the Court cannot consider passages from Defendant Saleem Khan's deposition that the Khans have failed to properly place before the Court. (*See* Defendants' Opposition, at 10-11).

"reasonable likelihood or probability" of a prospective business relationship with any third party let alone MuscleTech, the third party specifically referenced in Defendants' response brief.[22] Furthermore, as pointed out by Plaintiffs, Defendant Saleem Khan's actual testimony contradicts Defendants' argument:

> Q: Were you looking to enter into a contractual relationship with a third party? Were you intending on getting into a relationship?
> A: We were intending to get a good product, but I don't think we wanted to sign a contract or anything, but we were willing to buy product and see if we can get a better price than GNC is giving us, and we were right away referred [by the third party] to GNC. We can't sell you this; you got to talk to GNC.

(Docket No. 59-17 at 98:13-24); (*see also* Docket No. 59-17 at 80:2-7) ("Q: Were you anticipating entering into some contractual relationship with the manufacturer of these products [i.e., Hydrocut or Xenadrine]? A: Not a contractual relationship, but I would have liked to ask them to give us a better price").

The Court finds that Defendants have failed to demonstrate through competent evidence a reasonable likelihood or probability of a prospective contractual or business relationship with a third party. In point of fact, based on the deposition testimony presented, it appears that third parties explicitly rejected Defendants' business claims. (*See* Saleem Khan Deposition at 98:23-24) (admitting that third parties referred the Khans to GNC, informing them "We can't sell you this; you got to talk to GNC"). Accordingly, GNC's Motion for Summary Judgment as to the Khans' counterclaim for tortious interference with prospective business relations will be granted.

---

[22] In their Complaint at Count III, the Khans make only a vague reference to GNC's interference with Plaintiffs' ability to purchase products from third party or "Direct Purchase" (DP) vendors. *See* Defendants' Complaint at ¶78. Nowhere in their Complaint do the Khans name any specific third party.

**CONCLUSION**

Based on the foregoing, the Court **GRANTS** in part and **DENIES** in part GNC's Motion for Summary Judgment [DE 56]. The Court grants Plaintiffs' motion to the extent that they seek summary judgment on their breach of contract claims but only as to liability. The Court further grants the motion to the extent that they seek summary judgment on the Khans' counterclaims and the Court dismisses the same with prejudice. The Court denies the motion without prejudice to the extent that Plaintiffs seek summary judgment on their breach of contract claims but only as to damages. Finally, as to GNC's Motion to Strike the Declarations of Sohail Khan, Saleem Khan, and Choudhury Muzaffar [DE 66], because summary judgment is appropriate here regardless of the declarations, the Court **DENIES as moot** said Motion.[23]

An appropriate Order to follow.

_s/ Nora Barry Fischer_
Nora Barry Fischer
United States District Judge

Date: March 3, 2008

cc:    All counsel of record

---

[23] The Court notes that Defendants only rely on the declarations at issue with respect to the merits of their claim for alleged violation of the implied duty of good faith and fair dealing in the performance of the various agreements, (*see* Docket No. 63 at 2-8). However, the Court did not reach the merits of the same insofar as the Court declined to extend the implied the duty of good faith and fair dealing beyond the termination of a franchise agreement, i.e., to include the performance of a contract. *See supra*.